UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN MCKILLIP, SR., | ) |
| Plaintiff/Counterdefendant, | ) Case No. 18-cv-3698 |
| v. | ) Judge Sharon Johnson Coleman |
| JASON LAMBERT, et al., | ) |
| Defendants/Counterplaintiffs. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen McKillip, Sr. ("McKillip, Sr.") brings this action against defendants Jason Lambert ("Lambert") and Stephen McKillip, Jr. alleging breach of contract. Lambert filed a second amended answer [116] asserting counterclaims for defamation *per se* (Count I); defamation *per quod* (Count II); and violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count III). Before the Court is McKillip, Sr.'s motion to dismiss Lambert's second amended counterclaims [121]. For the reasons stated below, the Court grants in part and denies in part McKillip, Sr.'s motion.

**Background**

In 2004, Lambert worked for McKillip, Sr. at McKillip Industries, Inc. ("McKillip Industries"). In 2014, Lambert was promoted to President of McKillip Industries. On May 10, 2018, Lambert resigned from this position due to McKillip, Sr.'s alleged improper conduct. McKillip, Sr.'s complaint stems from disagreement over Lambert's resignation and the sale of McKillip Industries. In his counterclaim, Lambert alleges that McKillip, Sr. made numerous defamatory and/or disparaging statements about Lambert to third parties regarding his work with McKillip Industries.

Between May 11, 2018 and May 14, 2018, McKillip, Sr. exchanged emails regarding the potential sale of McKillip Industries with the President/CEO and Vice President of Repacorp, Inc. ("Repacorp"), Rick Heinl and Rochelle Heinl (the "Heinls). Lambert cites to five emails that he alleges contain eleven defamatory statements regarding Lambert in his professional capacity or imputing to him the commission of a crime. For example, McKillip, Sr. wrote to the Heinls on May 12, 2018 that "'Jason cheated me out of' $2 million"[1] and on May 14, 2018 that "Jason MAY have omitted a lot of information on our financial statements." (Dkt. 116, at ¶ 15c, 15e).

Lambert also cites to approximately twenty emails and phone calls from McKillip, Sr. to former employees, vendors, suppliers, and customers in support of his defamation claim. These emails contain assertions that Lambert abandoned McKillip Industries, that he is a liar and a thief, and that he ruined the company. For instance, on May 10, 2018, the same day Lambert resigned, McKillip, Sr. wrote former employees of McKillip Industries, "Jason has screwed us all very very badly he lied to Repacorp who was about to buy us," "he is a selfish pig," and "He is truly truly SCUM." (*Id.* at ¶ 18a).

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible if it contains "factual

---

[1] All alleged defamatory statements appear exactly as quoted in the second amended counterclaim, including grammar and spelling errors.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

I.    <u>Waiver</u>

The Court first addresses whether McKillip, Sr. waived the arguments in his motion to dismiss. The parties have engaged in significant motion practice without notable progress in the case since its filing in 2018. Both parties have filed multiple amended pleadings and motions to dismiss. The Court previously granted McKillip Sr.'s motion to dismiss Count III and Count IV of Lambert's first amended counterclaim and denied the motion to dismiss all defamation claims for untimeliness. (Dkt. 115). The Court now considers plaintiff's motion to dismiss defendant's second amended answer with counterclaims. Although Lambert's defamation counterclaims were not amended, McKillip, Sr. raises arguments for dismissal not included in his prior motion to dismiss. Lambert responds that all new arguments not previously brought are waived.

The Seventh Circuit clearly held in *Ennenga* that a party's arguments not brought in prior motions to dismiss for failure to state a claim are not waived. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Rule 12(g)(2) of the Federal Rules of Civil Procedure restricts parties from "raising a defense or objection that was available to the party but omitted from its earlier motion" except as provided in Rule 12(h)(2)–(3). The Seventh Circuit interprets this exception to mean that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *Ennenga*, 677 F.3d at 773; *cf. In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017) (noting the circuit disagreement and compiling cases). While the purpose of Rule 12(g) is to streamline litigation and prevent piecemeal motions practice, the Seventh Circuit's approach "allows district courts to resolve cases on their merits at the pleading stage in the interest of efficiency." *Albers v. Board of County Comm'r*, 771 F.3d 697, 703 (10th Cir. 2014).

3

The Court therefore concludes that McKillip, Sr. did not waive these new arguments. While the Court strongly encourages the parties to avoid piecemeal litigation, which has already cluttered up the docket, the Seventh Circuit is clear that it is in the interests of justice to resolve the pleadings currently presented.

II.     Defamation *Per Se*

The construction of alleged defamatory statements is a question of law for the Court to decide. *Green v. Rogers*, 234 Ill. 2d 478, 492, 917 N.E.2d 450, 4590 (Ill. 2009). Under Illinois law, a statement is defamatory if it "tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (Ill. 2006). Defamation *per se* encompasses statements with apparent defamatory character for which the law presumes damages. *Id.* Illinois recognizes three categories of *per se* defamatory statements that are relevant here: (1) words that impute a person has committed a crime; (2) words that impute a person is unable to perform or lacks integrity in performing their employment duties; and (3) words that impute a person lacks ability or otherwise prejudices that person in their profession. *Green*, 234 Ill. 2d at 491–92.

Numerous exceptions and defenses apply to defamation. First, p*er se* defamatory statements are not actionable if they are capable of any reasonable innocent construction. *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). However, the court must give the statement its natural and obvious meaning given the substance of the statement and the context in which it was made. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 93, 672 N.E.2d 1207, 1217 (Ill. 1996). Additionally, statements of opinion are not defamatory. *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 727 (7th Cir. 2004). To separate facts from opinions, courts consider, "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and

4

(3) whether the statement's literary or social context signals that it has factual content." *Huon v. Denton*, 841 F.3d 733, 733-34 (7th Cir. 2016) (internal citations omitted).

Singular assertions of untruthfulness do not constitute defamation *per se*. *See Piersall v. SportsVision of Chicago*, 230 Ill. App. 3d 503, 510, 595 N.E.2d 103, 107 (1st Dist. 1992). But such accusations may become defamatory if put into the context of specific facts. *Id.* Assertions of unlawful behavior similarly require specificity. *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 329–30, 708 N.E.2d 441, 451 (1st Dist. 1999) ("statement that [the plaintiff] was a 'crook' was not actionable because it was not made in any specific factual context.").

Finally, truth is an absolute defense to defamation and the plaintiff bears the initial burden of alleging the statement's falsity. *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 34, 30 N.E.3d 572, 587. The defendant may thereafter avoid liability by showing substantial truth, that is, that statement's falsehood does "no *incremental* damage to the plaintiff's reputation." *Republic Tobacco Co.*, 381 F.3d at 727 (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (emphasis in original).

First, as pled, McKillip, Sr.'s emails to the Heinls constitute defamation *per se*. In isolation, some of the statements appear too ambiguous or nonfactual, i.e., "[Jason] has nearly ruined my sons company."[2] (Dkt. 116, at ¶ 15b). However, the Court assesses these statements in their broader context. *See Bd. of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 832 (7th Cir. 2019) ("Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements."). Directly following Lambert's departure from McKillip Industries, McKillip, Sr. sent emails to industry professionals alleging specific acts of wrongdoing and attacking Lambert's professional character. (Dkt. 116, at ¶ 15c, 15e) ("Jason

---

[2] All quotations contain punctuation, spelling, and grammar used in Lambert's second amended counterclaim. No corrections, substitutions, or omissions have been made by the Court.

cheated me out of" $2 million"; "Jason MAY have omitted a lot of information on our financial statements."). Given the totality of the circumstances, such as the recipients of the emails and the events precipitating their transmission, the statements that Lambert improperly abandoned and/or ruined McKillip Industries contain factual assertions impugning Lambert's professional integrity. *See Huon*, 841 F.3d at 733-34. In contrast, singular communications with individuals containing bare assertions that Lambert "abandoned" McKillip Industries lack sufficient literary or social context to transform the statement from opinion to factual assertion. *Id*; (Dkt. 116, at ¶ 18f, "JASON HAS NOW ABANDONED USA WITHOUT NOTICE"; 17, 18k).

Second, emails asserting that Lambert lied to Repacorp about his ownership of McKillip Industries and manipulated the sale of McKillip Industries to Repacorp constitute defamation *per se*. (Dkt. 116, at ¶ 18a, "Jason has basically put a stop to the sale by lying and saying he doesn't own USa"; 18b–18c). McKillip, Sr. sent these emails in quick succession to former McKillip Industries employees directly following Lambert's contentious departure from the corporation. This background contextualizes otherwise broad allegations of wrongdoing to create factual allegations of professional impropriety. *Huon*, 841 F.3d 733, 733-34.

Next, McKillip, Sr.'s statements to business professionals that Lambert attempted to improperly avoid debts are actionable as they attack Lambert's professional integrity. (Dkt. 116, at ¶ 18n, "NO we can never run up bills we know will never be paid that is not right (that is how Jason operates)"). Similarly, emails alleging that Lambert attempted to improperly shift responsibility of his debts to McKillip, Sr. impugn Lambert's professional reputation. (*Id.* at ¶ 18g, "[Jason] is a thief he is attempting to steal 2million form me"; 18j and 18i). Specific allegations that Lambert lied about his debts assail Lambert's integrity as a businessman. (*Id.* at ¶ 18o, "Jason continues to tell huge lies to supplier he ran up bills with and then blames the debt being unpaid on me" and "he tells people it was my fault because I reduced the bank debt"; 18p and 18q).

Statements identifying specific criminal actions also survive the motion to dismiss. The assertion that "[Jason] has already stolen two computers" propounds a verifiable statement of fact. (Dkt. 116, at ¶ 18e). In contrast, the statement that Lambert is a "real thief and jerk" is merely a broad assertion bearing a non-criminal meaning. (*Id.* at ¶ 18h); *see Dubinsky*, 303 Ill. App. 3d at 329–30. Likewise, the statement "(we know he took tow computers)" is capable of innocent construction as there is a clear non-criminal construction of the word "took." (*Id.* at ¶ 18m); *Lott*, 556 F.3d at 568.

Further, letters sent from McKillip, Sr. to suppliers and vendors alleging that Lambert abandoned his position, but is nevertheless responsible for debts, are capable of innocent construction. (*Id.* at ¶ 16, "All debts with only one exception are solely Jason Lambert's responsibility"; 18l). Both emails inform the recipients that they must contact Lambert directly to settle outstanding debts. Although they contain allegations of abandonment, they are reasonably construed as attempting to update consumers on the status of outstanding debts rather than to tarnish their view of Lambert. *Lott*, 556 F.3d at 568.

McKillip, Sr. responds that Lambert omitted key words from his quotations that would show the statements are either opinion or, if factual, true. It is possible that viewing the full, unedited email correspondence could alter the above analysis. However, the Court will not consider whether Lambert omitted statements as it accepts Lambert's recitation of the facts as true. *Erickson*, 551 U.S. at 94. Additionally, McKillip, Sr. did not attach the quoted emails to his motion. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss… if they are referred to in the plaintiff's complaint and are central to this claim.'") (internal citations omitted). The Court notes the seemingly relevant defense of substantial truth, given the underlying litigation in this case. While the Court may not at this juncture consider a substantial truth defense, the parties

7

are forewarned that it may do so at the summary judgment stage. *See J. Maki Const. Co. v. Chicago Reg'l Council of Carpenters*, 379 Ill. App. 3d 189, 203, 882 N.E.2d 1173, 1186 (2d Dist. 2008).

III. Defamation *Per Quod*

In the alternative to his defamation *per se* claims, Lambert alleges that the above-cited statements constitute defamation *per quod* on the theory that they are "defamatory on its face, but [do] not fall within one of the limited categories of statements that are actionable *per se*." *Bryson*, 174 Ill. 2d at 104. Unlike defamation *per se*, damages are not presumed for defamation *per quod*. The plaintiff must "itemize his losses or plead specific damages of actual financial injury." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003); *see also Brown & Williamson Tobacco Corp. v. Jacobsen*, 713 F.2d 262, 269 (7th Cir. 1983).

Lambert maintains that McKillip, Sr.'s statements resulted in lost employment opportunities, lost income, and "other" actual damages totaling over $75,000. (Dkt. 116, at ¶ 34). However, Lambert does not cite specific lost opportunities or specify the source of his lost income. These general allegations are insufficient to meet the heightened pleading standard required for defamation *per quod*. *See Muzikowski*, 322 F.3d at 924. In addition, the deemed non-defamatory in Part II would similarly fail under the Lambert's theory of defamation *per quod*. Because Lambert failed to specifically allege special damages and all actionable statements proceed under defamation *per se*, Count III of Lambert's second amended counterclaim is dismissed with prejudice.

IV. IUDTPA Claim

The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(8) prohibits the "disparage[ment] of the goods, services, or business of another by false or misleading representation of fact." The statute essentially codifies the common-law tort of commercial disparagement. *Republic Tobacco Co.*, 381 F.3d at 997–98. Commercial disparagement and defamation *per se* are two distinct causes of action. *See Crinkley v. Dow Jones*, 67 Ill. App. 3d 869, 877, 385 N.E.2d 714, 719–20

(1st Dist. 1978). "Defamation lies when a person's integrity in his business or professions is attacked while commercial disparagement lies when the quality of his goods or services is attacked." *Allcare, Inc. v. Bork*, 176 Ill. App. 3d 993, 1000, 531 N.E.2d 1033, 1037 (1st Dist. 1988). Some statements may fall under both defamation and commercial disparagement by attacking both quality and integrity, such as false statements about an individual's substandard, negligent, or harmful business practices. *Id.*

The statements attributed to McKillip, Sr., cited above, only attack Lambert's integrity as a businessperson and not the quality of his services. In his counterclaim, Lambert does not describe the type of services he provided in his position. In response to the motion to dismiss, Lambert argues that the statements attack the quality of the goods and services he provided but fails to identify what those goods and services might be. Even if Lambert these statements attacked the quality of Lambert's services, statements of opinion are similarly not actionable under the IUDTPA, precluding the above-dismissed opinion statements. *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 136 F. Supp. 3d 911, 918 (N.D. Ill. 2015) (Kendall, J.) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). As such, Count III of Lambert's second amended counterclaim is dismissed without prejudice.

**Conclusion**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part the Plaintiff's motion to dismiss Lambert's amended counterclaim [121].

**IT IS SO ORDERED.**

Date: 12/2/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge